## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TENIA GOSHAY, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF CORNELIUS FREDERICK,
DECEASED
          Plaintiff,

                                                  Case No.

v.                                                Hon.

LAKESIDE FOR CHILDREN d/b/a
LAKESIDE ACADEMY; LAKESIDE ACADEMY;
SEQUEL YOUTH SERVICES OF
MICHIGAN, LLC; SEQUEL TSI
HOLDINGS, LLC; SEQUEL YOUTH
AND FAMILY SERVICES, LLC; SEQUEL ACADEMY
HOLDINGS, LLC; SEQUEL YOUTH SERVICES, LLC;
COLE HODGE (DEFENDANT #1); ZACHARY SOLIS
(DEFENDANT #2); MICHAEL MOSLEY (DEFENDANT #3);
ORLANDO LITTLE, JR. (DEFENDANT #4); COADY RIES
(DEFENDANT #5); MAURICE DAVIS (DEFENDANT #6);
JA'SHON CHEEKS (DEFENDANT #7); BRANDON REYNOLDS
(DEFENDANT #8); HEATHER MCLOGAN
(DEFENDANT #9); and BRADLEY HODGE (DEFENDANT #10).

          Defendants.

---

**GEOFFREY N. FIEGER (P30441)**
FIEGER, FIEGER, KENNEY &
HARRINGTON P.C.
Attorney for Plaintiff
19390 West Ten Mile Road
Southfield, MI  48075
(248) 355-5555
g.fieger@fiegerlaw.com

**JONATHAN R. MARKO (P72450)**
MARKO LAW, PLLC
Attorney for Plaintiff
1300 Broadway Street, Fifth Floor
Detroit, MI 48226
(313) 777-7529; Fax: (313) 771-5785
jon@markolaw.com

## PLAINTIFF'S COMPLAINT AND JURY REQUEST

NOW COMES Plaintiff, TENIA GOSHAY, Personal Representative of the Estate of CORNELIUS FREDERICK, Deceased, by and through her attorneys, Fieger, Fieger, Kenney & Harrington, P.C., and Marko Law, PLLC, and states in support of her complaint as follows:

## INTRODUCTION

Defendant Sequel, itself, and through the various named corporate entities, owns and operates foster care service facilities for juveniles at various locations throughout the United States, including the Western District of Michigan. Sequel's facilities are populated with children who are sent there by various state governments, including Michigan, California, Oregon, and others.  Sequel claims that its facilities provide comprehensive services for children. Children are supposed to be healed and safe at these facilities. In reality, Sequel's facilities are snake-pits where its staff members abuse and prey upon children; such as decedent orphan Cornelius Frederick. This case involves a youth home/detention center, owned by Defendant Sequel, and funded by the State of Michigan, where physical abuse of children residents was blatant, rampant, and condoned.

This is an action for money damages for clear violations of Cornelius' well settled Constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution. As a result of Defendants' deliberate indifference, willful

wanton and malicious actions, Cornelius, age 16, was suffocated to death by eight grown men after being thrown to the ground for the "crime" of throwing a sandwich on the floor.[1] All the perpetrators were employees of Defendants, operating under color of state law, and were each carrying out the customs and condoned policies and practices of their employer, Sequel, to abuse children by physically restraining them by suffocation and asphyxiation.

## JURISDICTION AND PARTIES

1.  Plaintiff brings this action pursuant to the Eighth and/or Fourteenth Amendment and 42 U.S.C. § 1983. This Court therefore has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2.  Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

3.  All of the Defendants herein are State actors, carrying out the public function of caring for orphans at the direction of the State of Michigan. Also, the State of Michigan monetarily subsidizes their activities. Samantha Lee, former Chief Compliance and Ethics Officer for Sequel Youth and Family Services, LLC., has admitted that Sequel receives virtually all funds from Federal, Local, and State

---

[1] There is a video of the killing, which video is attached hereto and is incorporated by reference, as part and parcel of this complaint: https://link.edgepilot.com/s/545e9c4d/tR5LV53Fk0iVmgguGLIX7A?u=https://vimeo.com/446914032

governments, and that the guidelines of the state controls the running of Lakeside. She also admits that at Lakeside's discretion the children's freedoms are totally restricted and can be locked down.

4. Plaintiff, Tenia Goshay, is the duly appointed personal representative of Cornelius Frederick's Estate, and is a resident of Wayne County, State of Michigan.

5. Cornelius Frederick, now deceased, was a 16-year-old orphan who resided in Kalamazoo, Michigan, under the exclusive care and custody of the Defendants as a ward of the State of Michigan.

6. Defendant Sequel Youth and Family Services, LLC is a Delaware corporation whose headquarters is located in Huntsville, Alabama, and that owns and/or operates and/or conducts business in the County of Kalamazoo, State of Michigan. To the best of Plaintiff's knowledge, this Defendant owns and controls all of the other corporate Defendants, and that such other corporations are mere alter egos of this Defendant **(See Exhibit 1).**

7. Defendant Lakeside is a Michigan corporation that owns and/or operates and/or conducts business in the County of Kalamazoo, State of Michigan.

8. Defendant Lakeside Academy is a Michigan corporation that owns and/or operates and/or conducts business in the County of Kalamazoo, State of Michigan.

9. Defendant Sequel Youth Services of Michigan, LLC is a Michigan corporation that owns and/or operates and/or conducts business in the County of Kalamazoo, State of Michigan.

10. To the best of Plaintiff's knowledge and understanding Defendant Sequel TSI Holdings, LLC is an Iowa corporation that owns and/or operates and/or conducts business in the County of Kalamazoo, State of Michigan.

11. To the best of Plaintiff's knowledge and understanding, Defendant Sequel Academy Holdings, LLC is an Iowa corporation that owns and/or operates and/or conducts business in the County of Kalamazoo, State of Michigan.

12. To the best of Plaintiff's knowledge and understanding, Defendant Sequel Youth Services, LLC is an Iowa corporation that owns and/or operates and/or conducts business in the County of Kalamazoo, State of Michigan.

13. Defendant Cole Hodge (Defendant #1 herein), to the best of Plaintiff's knowledge and understanding is a resident of the Western District, and was at all times relevant hereto, an employee of the Defendants Lakeside Academy and Sequel Youth Services of Michigan, LLC., and/or Sequel Youth and Family Services, LLC., and was at all times operating under the color of state law. Further, said Defendant participated in the unconstitutional use of excessive force by virtue of the restraint/suffocation of Cornelius as described herein, and also failed to render much needed medical care thereafter, or to intervene to stop the suffocation.

14. Defendant Zachary Solis (Defendant #2 herein), to the best of Plaintiff's knowledge and understanding is a resident of the Western District, and was at all times relevant hereto, an employee of the Defendants Lakeside Academy and Sequel Youth Services of Michigan, LLC., and/or Sequel Youth and Family Services, LLC., and was at all times operating under the color of state law. Further, said Defendant participated in the unconstitutional use of excessive force by virtue of the restraint/suffocation of Cornelius as described herein, and also failed to render much needed medical care thereafter, or to intervene to stop the suffocation.

15. Defendant Michael Mosley (Defendant #3 herein), to the best of Plaintiff's knowledge and understanding is a resident of the Western District, and was at all times relevant hereto, an employee of the Defendants Lakeside Academy and Sequel Youth Services of Michigan, LLC., and/or Sequel Youth and Family Services, LLC., and was at all times operating under the color of state law. Further, said Defendant participated in the unconstitutional use of excessive force by virtue of the restraint/suffocation of Cornelius as described herein, and also failed to render much needed medical care thereafter, or to intervene to stop the suffocation.

16. Defendant Orlando Little, Jr. (Defendant #4 herein), to the best of Plaintiff's knowledge and understanding is a resident of the Western District, and was at all times relevant hereto, an employee of the Defendants Lakeside Academy and Sequel Youth Services of Michigan, LLC., and/or Sequel Youth and Family Services, LLC.,

and was at all times operating under the color of state law. Further, said Defendant participated in the unconstitutional use of excessive force by virtue of the restraint/suffocation of Cornelius as described herein, and also failed to render much needed medical care thereafter, or to intervene to stop the suffocation.

17. Defendant Coady Ries (Defendant #5 herein), to the best of Plaintiff's knowledge and understanding is a resident of the Western District, and was at all times relevant hereto, an employee of the Defendants Lakeside Academy and Sequel Youth Services of Michigan, LLC., and/or Sequel Youth and Family Services, LLC., and was at all times operating under the color of state law. Further, said Defendant participated in the unconstitutional use of excessive force by virtue of the restraint/suffocation of Cornelius as described herein, and also failed to render much needed medical care thereafter, or to intervene to stop the suffocation.

18. Defendant Maurice Davis (Defendant #6 herein), to the best of Plaintiff's knowledge and understanding is a resident of the Western District, and was at all times relevant hereto, an employee of the Defendants Lakeside Academy and Sequel Youth Services of Michigan, LLC., and/or Sequel Youth and Family Services, LLC., and was at all times operating under the color of state law. Further, said Defendant participated in the unconstitutional use of excessive force by virtue of the restraint/suffocation of Cornelius as described herein, and also failed to render much needed medical care thereafter, or to intervene to stop the suffocation.

19. Defendant Ja'Shon Cheeks (Defendant #7 herein), to the best of Plaintiff's knowledge and understanding is a resident of the Western District, and was at all times relevant hereto, an employee of the Defendants Lakeside Academy and Sequel Youth Services of Michigan, LLC., and/or Sequel Youth and Family Services, LLC., and was at all times operating under the color of state law. Further, said Defendant participated in the unconstitutional use of excessive force by virtue of the restraint/suffocation of Cornelius as described herein, and also failed to render much needed medical care thereafter, or to intervene to stop the suffocation.

20. Defendant Brandon Reynolds (Defendant #8 herein), to the best of Plaintiff's knowledge and understanding is a resident of the Western District, and was at all times relevant hereto, an employee of the Defendants Lakeside Academy and Sequel Youth Services of Michigan, LLC., and/or Sequel Youth and Family Services, LLC., and was at all times operating under the color of state law. Further, said Defendant participated in the unconstitutional use of excessive force by virtue of the restraint/suffocation of Cornelius as described herein, and also failed to render much needed medical care thereafter, or to intervene to stop the suffocation.

21. Defendant Heather McLogan (Defendant #9 herein), to the best of Plaintiff's knowledge and understanding is a resident of the Western District, and was at all times relevant hereto, an employee of the Defendants Lakeside Academy and Sequel Youth Services of Michigan, LLC., and/or Sequel Youth and Family Services, LLC.,

and was at all times operating under the color of state law. Said Defendant was a nurse who observed the suffocation of Cornelius and thereafter took no action whatsoever to render aid (such as initiating CPR), or to take such other measures to protect Cornelius serious medical needs after he was rendered unconscious because of suffocation.

22. Defendant Bradley Hodge (Defendant #10 herein), to the best of Plaintiff's knowledge and understanding is a resident of the Western District, and was at all times relevant hereto, an employee of the Defendants Lakeside Academy and Sequel Youth Services of Michigan, LLC., and/or Sequel Youth and Family Services, LLC., and was at all times operating under the color of state law. Said Defendant was at all times material hereto a supervisor at Lakeside Academy with policy making and disciplinary authority in the institutional setting, acting in his official capacities, and owed Cornelius a duty of protection while Cornelius was incarcerated at Sequel. He was, at all times, present and/or observed the suffocation of Cornelius, and took no action to stop it or to render care to the known and obvious serious medical condition, and thereafter, took no disciplinary action against the known perpetrators, and as such carried out the customs and policies and practices of his employer of allowing suffocation.

23. The amount in controversy exceeds the jurisdictional minimum for this Honorable Court, exclusive of interest, costs and attorney fees, and the matter is otherwise within the jurisdiction of this Court.

## FACTS

24. Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

25. As a ward of the state, and because of being orphaned, Cornelius Fredericks, age 16, was housed by the State of Michigan at Defendant Lakeside Academy, which is located at 3921 Oakland Drive, Kalamazoo, MI 49008. Lakeside Academy's function is that of a state actor, carrying out the public function of caring for orphans at the direction of the State of Michigan.

26. Prior to July 2007 Defendant Lakeside Academy was known as "Lakeside for Children."

27. In July 2007, Lakeside for Children entered into an agreement with Defendant Sequel Youth and Family Services, and the Defendant's facility was, thereafter, renamed Lakeside Academy.

28. Defendants populated its facilities with children provided to them by various state and local governmental entities. The State of Michigan, through the taxpayers, monetarily subsidized the facility. The children, wards of the government, became

commodities in the Defendants scheme to maximize profits at the expense of the rights and welfare of children.

29. There are two general categories of children that the State of Michigan, and other states send to Defendants: (1) children who are wards of the state and have no legal or natural guardian to take care of them (orphans); and (2) children who are ordered to be incarcerated in the Defendants' facilities, as part of the juvenile justice system (e.g., a child violates probation or commits a crime and is sent to Sequel for "rehabilitation" or deterrence).

30. Defendants charge for such care and are paid directly by state and local governments (taxpayers) for providing care and housing to the children, similar to a privatized prison or government subsidized hospital.

31. Defendants' income is derived solely and exclusively through governmental funds.

32. One Sequel employee, Defendant Heather McLogan, has testified (under oath) that Sequel's motto was "heads in beds," meaning that Sequel, and as a custom, practice, and/or policy, pressured its facilities (and employees) to operate at or over maximum capacity so as to order maximize profits, regardless of the level of care provided to the children.

33. Another employee has testified under oath that Sequel prioritized "cash over kids."

34. The children at Defendants facilities are under 24 hours/7 days supervision, and their movements are restricted like a prison.

35. The co-founder of Sequel, Chip Ripley, served as the Chief Operating Officer of Youth Services International ("YSI"), a corporation that, in the past operated and managed juvenile facilities and treated juvenile offenders.

36. After serving in various corporate positions, in 1999, Ripley capitalized on the shift towards prison privatization by starting his own youth prison company (Sequel Youth and Family Services).

37. Sequel followed the model Ripley had developed for YSI by purchasing existing youth facilities under a corporate umbrella, and then slashing expenses to maximize profits from state contracts. In effect, Ripley and Sequel operate and manage what amount to nothing more than state-contracted youth detention centers (the standard private equity model).

38. Similar to a prison setting, the children are not free to leave the Defendants' facilities of their own volition, and their liberties are entirely restricted.

39. The children at Lakeside Academy are housed in small rooms similar to jail cells, in units that can be completely locked down. **Exhibit 2, Photos of Children's Lockdown Units.**

40. The corporate Defendants enter into agreements with various state and local government to house children at Sequel facilities.  As a general condition for a state

contract, the State of Michigan required that Sequel abide by certain conditions with regard to childcare. However, in fact, there was little or no regulation or compliance with any such contractual conditions.

41.  The corporate Defendants were required, by agreement, to comply with the government's directions on staffing, management, restraint of residents, billing for services, and other conditions. However, again, there was little or no enforcement, regulation, or compliance by Sequel.

42. The corporate Defendants had the ultimate say and control over how long a child was detained at the facilities.

43. Cornelius Frederick was physically restrained scores of times by employees of the Defendants during the short period of time that he was housed at Defendants' facility.  Physical restraint and suffocation was an accepted and condoned custom, policy and practice of Defendants. Many, if not all, of such restraints constituted abuse and violations of Cornelius' constitutional right to be free from the use of excessive force, and to substantive due process of law.

44. On January 4, 2020, Cornelius was restrained and suffocated by Defendants employees for over 35 minutes, to the point that he was unable to breathe and was rendered incapacitated. Such restraint by suffocation was a custom, policy, and practice of the Defendants, and was condoned by the Defendant corporations as a mechanism to subjugate children.

45. On January 20, 2020, Cornelius was again subjected to another suffocating restraint.

46. On January 26, 2020, Oregon Senator Sara Gelser emailed the CEO of Sequel, Chris Roussos, and advised him that Lakeside Academy had inadequate training in crisis intervention. **(Exhibit 3)**

47. Senator Gelser was so concerned about the systemic problems at Defendants' facilities  regarding the use of the unconstitutional force and restraint practices, that she exercised her right to inspect various facilities across the country, including Lakeside Academy, that housed children sent to the Defendants by the State of Oregon and California.

48. Senator Gelser met with the CEO of Sequel, Chris Roussos, two months before Cornelius' death, and told him that "somebody was going to be seriously hurt or they would die" if Sequel did not change its unconstitutional restraint practices, which Senator Gelser had observed as a custom, policy, and practice at Sequel facilities.

49. On April 29, 2020, the staff at Lakeside Academy again used improper restraint upon the body of Cornelius Fredericks, this time suffocating  him to death.

50. Even though Cornelius Fredericks screamed, "I can't breathe!", and urinated on himself during the killing, Defendant's employees continued to suffocate him for a prolonged period of time.  After he was unconscious, and while he lay

motionless on the floor, in a pool of urine, in evident and readily apparent need of medical attention, Defendants herein provided no aid or attention to his serious medical conditions.

51. After suffering a cardiac arrest and resultant anoxic brain damage from the suffocation, Cornelius was later transported, unconscious, to Bronson Methodist Hospital in Kalamazoo and placed on life support.

52. On May 1, 2020, 30 hours after the suffocation, Cornelius died at the Bronson Hospital in Kalamazoo.

53. The use of unconstitutional force restraint practices by Defendants' staff is not a novel occurrence. Rather, it is an accepted and approved custom, policy and practice.

54. The Michigan Department of Health and Human Services has investigated a litany of complaints regarding Defendants' employees who utilize excessive and unconstitutional force and abuse upon the children at Lakeside Academy.

55. Since 2016, the Sequel Defendants have been cited on at least thirty occasions for violations that were investigated by the State of Michigan Department of Health and Human Services, including violations involving facility and premises maintenance, staff qualifications, discipline, behavior management, resident restraint, and sufficiency of staff.

56. Additionally, since 2016, the Sequel Defendants have been made aware, through employment discipline, of, at least eight employees who employed unconstitutional restraint upon children.

57.  Since 2016 corporate Defendant Sequel, et al., suspended and/or placed on administrative leave at least seven employees for improper use of restraints and/or failure to use proper de-escalation techniques, and/or improperly supervising the children.

58.  Within the six months prior to the death of Cornelius Fredericks, Defendant corporate entities acknowledged six separate incidents of violations pertaining to employees' unconstitutional use of force and restraints. It is beyond question that the corporate Defendants, Sequel, et al., knew of the continued practice of the use of suffocation restraints upon children, and permitted such activity to continue unabated as a custom, policy, and practice.

59. Lakeside Academy had its license to care for children revoked by the Michigan Department of Health and Human Services as a result of the unconstitutional suffocation restraint of Cornelius Fredericks**. (Exhibit 4)**

60. Defendants, and each of them, were acting pursuant to a custom, practice, and policy of Sequel to permit suffocation killing, and were acting under color of state law at the time they suffocated and abused children, including Cornelius. See *Monroe v Pape*, 365 US 167; 81 S Ct 473; 5 L Ed 2d 492 (1961).

61. Defendants, and each of them, acted under the color of state law by fulfilling the public function of juvenile incarceration, detainment, commitment, rehabilitation, and/or acted in concert with state actors in denying Plaintiff his federally protected civil rights.

62. The Defendants voluntarily assumed the duty of care for Cornelius Fredericks, which included, but was not limited to, the following:

    a.  Exercise of reasonable and ordinary care for his safety and well-being;

    b.  Providing trained and qualified employees, staff and/or agents to deliver safe and reasonable care for a child's safety and basic needs;

    c.  Hiring, training, retaining, and supervising employees, staff and/or agents to provide direct and indirect supervision of Cornelius Fredericks while he was in custody at Defendants' facility, so as to protect him from harm;

    d.  Assure that employees, staff and/or agents treated Cornelius Fredericks at all times with respect and dignity;

    e.  Conduct full and complete investigations whenever complaints of abuse or neglect were brought to Defendants' attention, and to take action to prevent abuse when first discovered; and

    f.  Provide the standard and quality of care and services that Defendants promised they would provide as set forth agreement between Sequel and the State of Michigan, as part of the bargained for exchange.

63. Defendants voluntarily assumed such duties, owed to Cornelius Fredericks, while he resided at Lakeside Academy, and breached such duties.

64. Defendants had actual, constructive and/or ostensible knowledge of their employees' and/or staffs' and/or agents' regular mistreatment of Cornelius Fredericks, and of mistreatment of other children at Lakeside Academy.

65. As a direct and proximate result of acts committed by the corporate Defendants, and their employees, as described herein. Plaintiff's decedent suffered the injuries and damages as described in this complaint.

### COUNT I
### *MONELL* CLAIM
### AS TO THE CORPORATE DEFENDANTS

66. Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

67. By suffocating Plaintiff's decedent, Defendant corporations, and their employees, and agents, and each of them, subjected Cornelius Frederick to a depravation of clearly established, constitutionally protected rights and privileges secured by the Constitution of the United States, including deprivations of his Eighth and Fourteenth Amendment rights.

68. The foregoing rights were clearly established at the time of the violations.

69. The deprivations were, in part, permitted and caused by the customs, policies, and established practices of Defendants, acting under color of their statutory and legal authority, as provided to them by the State of Michigan and other governmental agencies.

70. The Defendants involved in the fatal restraint and suffocation of Cornelius, committed such constitutional violations, described herein, as a result of training and/or lack of re-training by Defendants, and by virtue of a custom, practice and/or policy of the corporate Defendants to permit such abuse, including restraint by suffocation.

71. The corporate Defendants employees and agents failed to properly train, monitor, direct, discipline and supervise its staff, and knew or should have known that its staff was engaging in the unconstitutional actions described herein, and did, in fact, permit, tacitly and openly and/or otherwise, such unconstitutional abuses as described herein.

72. The aforementioned customs, policies, and practices of Defendants, and said Defendants failure to properly and adequately train, monitor, instruct, direct, discipline, and supervise its employees, was reckless, malicious, willful, and wanton and was deliberately indifferent to the constitutional rights of the Plaintiff's decedent.

73. The aforesaid improper training, monitoring, instruction, direction, discipline, and supervision proximately caused the deprivation of Plaintiff's constitutional rights.

74. As a direct and proximate result of the unconstitutional acts and omissions of Defendants as described, Plaintiff was killed and suffered the damages set forth in this complaint.

### COUNT II
### 42 USC § 1983 INDVIDUAL VIOLATIONS OF THE EIGHTH AND/OR FOURTEENTH AMENDMENTS

75. Plaintiff realleges each preceding paragraph as fully set forth herein.

76. The individual Defendants named in this count [Defendants #1-10] had a clearly established constitutional duty to provide for Cornelius' serious medical needs, personal safety, and general welfare. They also had a duty to refrain from engaging in excessive force, or of violating Cornelius' substantive constitutional rights.

77. Although the Defendants named in this count were employed by a nominally private entity, i.e., Sequel Youth and Family Services, et al., said Defendants acted under color of state law because the Sequel Corporate Defendants, and each of them, fulfilled the public function of juvenile incarceration, detainment, care of state ward orphans, and commitment. Moreover, such individual Defendants acted in concert with other state actors (the corporate Defendants) in denying Cornelius' his constitutional rights.

78. By the actions described in this Complaint, Defendants #1 - #8, under color of state law, acted with deliberate indifference to Cornelius' personal safety and

general welfare, and acted contrary to Cornelius' constitutional rights by utilizing excessive force, and by suffocating him to death. Such unconstitutional actions deprived Cornelius of life and liberty interests, all in violation of the Constitution of the United States.

79. As to Defendant #9 Heather McLogan, she was a nurse employed by Defendant Sequel, et al., who acted under of color of state law. She acted with deliberate indifference to Cornelius' serious medical needs, personal safety, and general welfare, in violation of Cornelius' Eighth and/or Fourteenth Amendment constitutional rights, and she ignored his serious medical needs while he was being suffocated, and, thereafter, she failed to provide care for his obvious and serious medical needs while Cornelius was lying, motionless, not breathing, in a pool of urine, after being suffocated. Defendant McLogan has admitted that she stood by, after the suffocation, and did nothing (**Exhibit 5**).

80. By the actions described above, Defendants #1-9, under the color of state law, engaged in conduct that was so outrageous that it shocks the conscious, and constitutes a violation of Cornelius' Fourteenth Amendment substantive due process constitutional rights.

81. By the actions described above, Defendants #1-9, under color of state law, acted with deliberate indifference to Cornelius' serious medical needs, personal safety, and general welfare.

82. In violation of Cornelius' Eighth and/or Fourteenth Amendment constitutional rights, by utilizing excessive force and/or failing to intervene to stop the unconstitutional actions undertaken by all the other individually named Defendants herein, despite having a realistic opportunity to do so, Defendants #1-9 acted either maliciously, and/or with reckless, willful and/or wanton disregard, or with deliberate indifference towards Cornelius' clearly established constitutional rights which were being violated by the actions of all the other Defendants by virtue of their suffocation of Cornelius and/or their failure to intervene to stop the suffocation, and/or to render medical assistance for his serious medical needs.

83. By the actions described above, Defendant #10, under color of state law, in his capacity as a supervisor, had actual and constructive notice of the unconstitutional conduct of the other individual Defendants (#1-9) as described herein, and indeed, observed such conduct while it was happening, and did nothing to stop it, or to aid his ward. He acted with deliberate indifference to the violations of Cornelius constitutional rights. This Defendant supervisor, also, was required to take remedial action after becoming aware of such constitutional violations and failed to do so.

84. As a result of these aforesaid constitutional violations, as described herein, Cornelius endured pain and suffering, fright and shock, humiliation, and

embarrassment, and all damages permitted by the Michigan Wrongful Death Act
and §1983.

85. That the actions of Defendants, as specifically set forth above, were a
proximate cause of Cornelius Fredericks' injuries and damages, including but not
limited to:

    a.  Death;

    b.  Severe hypoxic brain injury;

    c.  Acute hypoxemic respiratory failure due to cardiopulmonary arrest;

    d.  Cardiogenic septic shock;

    e.  Electrolyte imbalance;

    f.  Metabolic acidosis;

    g.  Conscious pain and suffering;

    h.  Fright, shock, and terror;

    i.  Humiliation and mortification;

    j.  Mental anguish;

    k.  Loss of love, society, and companionship;

    l.  Reasonable medical, hospital, funeral, and burial expenses;

    m.  Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

    n.  Attorney fees and costs pursuant to 42 USC § 1988;

o. Any and all other damages otherwise recoverable under federal and Michigan Wrongful Death Act, including loss of earning capacity and loss of household services.

86. The individual Defendants named in this complaint subjected Cornelius to unconstitutional deprivations of his constitutional rights in such a manner so as to render these Defendants liable for punitive damages as a matter of Federal Common Law under *Smith v. Wade*, 461 US 30 (1983).

87. Cornelius' estate is also entitled to recover costs, including reasonable attorney fees under 42 USC §1988.

88. Cornelius' estate is entitled to compensatory and punitive damages in an amount exceeding Fifty-Million Dollars ($50,000,000.00).

WHEREFORE, Plaintiff, TENIA GOSHAY, as Personal Representative of the Estate of CORNELIUS FREDERICK respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of Fifty-Million Dollars $50,000,000.00), together with interest, costs and attorney fees, as well as punitive and/or exemplary damages.

Respectfully submitted,

Date: September 30, 2021     /s/: Geoffrey N. Fieger
Geoffrey N. Fieger (P30441)
*Fieger, Fieger, Kenney & Harrington, P.C.*
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, MI 48075
(248) 355-5555
g.fieger@fiegerlaw.com

AND

Jonathan R. Marko (P72450)
MARKO LAW, PLLC
Attorneys for Plaintiff
1300 Broadway Street, Fifth Floor
Detroit, MI 48226
(313) 777-7529 / (313) 771-5785

---

**PROOF OF SERVICE**

The undersigned hereby certifies that she served a copy of the foregoing upon all attorneys of record at their respective business addresses as disclosed by the pleadings of record herein on this 30th day of September, 2021.

__US Mail ___ Hand Delivered  ___ UPS ___ Other

___Email  X ECF ___ Federal Express ___ Facsimile

Signature: /s/ Samantha M. Teal

**Legal Assistant to Geoffrey N. Fieger**

---

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TENIA GOSHAY, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF CORNELIUS FREDERICK,
DECEASED
                Plaintiff,

                                        Case No.
v.                                   Hon.

LAKESIDE FOR CHILDREN d/b/a
LAKESIDE ACADEMY; LAKESIDE ACADEMY;
SEQUEL YOUTH SERVICES OF
MICHIGAN, LLC; SEQUEL TSI
HOLDINGS, LLC; SEQUEL YOUTH
AND FAMILY SERVICES, LLC; SEQUEL ACADEMY
HOLDINGS, LLC; SEQUEL YOUTH SERVICES, LLC;
COLE HODGE (DEFENDANT #1); ZACHARY SOLIS
(DEFENDANT #2); MICHAEL MOSLEY (DEFENDANT #3);
ORLANDO LITTLE, JR. (DEFENDANT #4); COADY RIES
(DEFENDANT #5); MAURICE DAVIS (DEFENDANT #6);
JA'SHON CHEEKS (DEFENDANT #7); BRANDON REYNOLDS
(DEFENDANT #8); HEATHER MCLOGAN
(DEFENDANT #9); and BRADLEY HODGE (DEFENDANT #10).

                Defendants.

---

| | |
|---|---|
| **GEOFFREY N. FIEGER (P30441)** | **JONATHAN R. MARKO (P72450)** |
| FIEGER, FIEGER, KENNEY & HARRINGTON P.C. | MARKO LAW, PLLC |
| Attorney for Plaintiff | Attorney for Plaintiff |
| 19390 West Ten Mile Road | 1300 Broadway Street, Fifth Floor |
| Southfield, MI  48075 | Detroit, MI 48226 |
| (248) 355-5555 | (313) 777-7529; Fax: (313) 771-5785 |
| g.fieger@fiegerlaw.com | jon@markolaw.com |

---

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COMES Plaintiff, TENIA GOSHAY, as Personal Representative of the Estate of CORNELIUS FREDERICK, deceased, by and through their attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., and MARKO LAW PLLC., hereby demands a trial by jury in the above-captioned matter.

Respectfully submitted,

Date: September 30, 2021         <u>/s/: Geoffrey N. Fieger</u>
Geoffrey N. Fieger (P30441)
*Fieger, Fieger, Kenney & Harrington, P.C.*
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, MI 48075
(248) 355-5555
g.fieger@fiegerlaw.com

AND

Jonathan R. Marko (P72450)
MARKO LAW, PLLC
Attorneys for Plaintiff
1300 Broadway Street, Fifth Floor
Detroit, MI 48226
(313) 777-7529 / (313) 771-5785

**PROOF OF SERVICE**

The undersigned hereby certifies that she served a copy of the foregoing upon all attorneys of record at their respective business addresses as disclosed by the pleadings of record herein on this 30th day of September, 2021.

__US Mail ___ Hand Delivered  ___ UPS ___ Other

___Email  X ECF ___ Federal Express ___ Facsimile

Signature: /s/ Samantha M. Teal

**Legal Assistant to Geoffrey N. Fieger**